IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, : : : Plaintiff, : : v. : : COMMONWEALTH LAND TITLE INSURANCE COMPANY, : : Defendant. : | CIVIL ACTION NO. 05-281 |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                       October 19, 2005

Presently before the Court are Defendant's Motion to Dismiss Plaintiff's Complaint (Docket No. 3), Plaintiff's Reply (Docket No. 4), Defendant's Reply (Docket No. 5), and Plaintiff's Surreply (Docket No. 8).

**I.   FACTUAL AND PROCEDURAL HISTORY**

This is a declaratory judgment action seeking a declaration as to coverage and liability under a title insurance policy. On June 28, 1998, Liberty Mills Limited Partnership ("Liberty Mills Limited") entered into a Master Declaration and Agreement of Easement, Covenants, Conditions and Restrictions with Liberty Mills Residual Limited Partnership. Almost two months later, Liberty Mills Limited conveyed the Property to PMI Associates ("PMI") on August 15, 1988. At the time of the transfer, Liberty Mills Limited and PMI Associates entered into a Declaration of Restrictions (the "Declaration").

Close to thirteen years later, on March 22, 2001, Plaintiff loaned $3,500,000 to PMI. PMI and Plaintiff entered into an Open-End Mortgage and Security Agreement whereby PMI granted Plaintiff a security interest in the Property. On April 2, 2001, Defendant issued a title insurance policy (the "Policy") insuring Plaintiff's interest in the Property.

On April 28, 2003, PMI defaulted on repayment of its loan to Plaintiff and conveyed the Property to Plaintiff by deed in lieu of foreclosure. Plaintiff then found a buyer for the Property, Ironwood Real Estate, LLC ("Ironwood"). Meanwhile, Liberty Mills Limited had conveyed its interest to Franklin Mills Limited Partnership ("Franklin Mills"). On October 10, 2003, Plaintiff sent a letter to Franklin Mills, requesting that Franklin Mills waive any right of first refusal or option to purchase that it might have with respect to Plaintiff's proposed sale of the Property to Ironwood. In response, Franklin Mills asserted that it does have a right of first refusal and an absolute right to refuse to approve a purchaser or occupant of the Property and rejected Ironwood as a potential buyer.

Plaintiff made a claim for coverage under the ALTA 9 Endorsement of the Policy, arguing that Franklin Mills' action renders the Property unusable and unsalable, that the Declaration gives Franklin Mills an option to purchase the Property and a right of prior approval of future purchasers and occupants, and that coverage for an option to purchase and right of prior approval exists under the Policy. (Pl.'s Compl. ¶¶ 10, 11.) Defendant denied Plaintiff's claim for coverage in a letter dated April 13, 2004.

Plaintiff then filed this action seeking: (1) a declaration that the Policy affords coverage for an option to purchase, right of first refusal, or right of prior approval granted to

Franklin Mills by the Declaration; (2) a declaration that Defendant is liable under the Policy; and, (3) money damages.

Defendant filed this Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant claims that because Plaintiff "seeks insurance coverage on account of harm alleged to arise by operation of a document expressly excepted from coverage, and because no reasonable interpretation of the ALTA 9 Endorsement changes this result, [its] motion to dismiss should be granted." (Def.'s Mot. Dismiss 6.)

## II. MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) is granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000). While the Court must accept all factual allegations in the complaint as true, it "need not accept as true 'unsupported conclusions and unwarranted inferences.'" Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)). In a 12(b)(6) motion, the defendant bears the burden of persuading the Court that no claim has been stated. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Courts generally consider the allegations contained in the complaint, exhibits attached to the complaint, and public records of which the court may take judicial notice. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1992, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Ripeness

Although Defendant has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief can be granted, Defendant also argues that this case is not yet ripe for decision and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction. The Court may raise the issue of ripeness sua sponte because its subject matter jurisdiction is implicated. Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 (3d Cir. 1988); Hurley v. Columbia Cas. Co., 976 F. Supp. 268, 272 (D. Del. 1997). The Declaratory Judgment Act provides that:

> In case of actual controversy within its jurisdiction, . . . any courts of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Article III, Section 2 of the Constitution of the United States "limits federal jurisdiction to actual 'cases' and 'controversies.'" Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153 (3d Cir. 1995) (quoting Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992)). The Constitutional "case or controversy" requirement is a "condition precedent to the proper exercise of judicial power by a federal court and the Declaratory Judgment Act can not relax that constitutional requirement." Travelers, 72 F.2d at 1153. In Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 260, 273 (1941), the Supreme Court explained that:

> [T]he question in case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

The Third Circuit focuses primarily on ripeness when determining whether an actual controversy exists in the context of a declaratory judgment action. Moore's Federal Practice, § 57.22[3][b]. The Third Circuit uses three factors to determine if a declaratory judgment action is ripe: (1) adversity of interests, (2) conclusiveness, and (3) practical help or utility. Ne Hub Partners, L.P v. CNG Transmission Corp., 239 F.3d 333, 343 n.9 (3d Cir. 2001); Travelers, 72 F.2d at 1154. Cf. Philadelphia Fed'n of Teachers v. Ridge, 150 F.3d 319, 323 n. 4 (3d Cir. 1998) (using the two part test announced by the Supreme Court in Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977), but noting that the Third Circuit's three pronged inquiry is a "refinement of the Supreme Court's test . . . [that] simply alters the headings under which various factors are grouped").

**1.     Adversity of Interests**

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." Travelers, 72 F.3d at 1154. "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." Armstrong, 961 F.2d at 411-12. However, a completed harm is not always necessary to establish adversity of interest between parties. Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983); Armstrong, 961 F.2d at 412. In the case of a threat of future harm, a declaratory judgment may be appropriate, but the plaintiff must demonstrate that the threat of future harm is "'real and immediate' throughout the course of the litigation." Travelers, 72 F.3d at 1154 (quoting Steffel v. Thompson, 415 U.S. 452, 459 n. 10 (1974)).

In the insurance context, parties may properly bring a declaratory judgment action to determine the scope of insurance coverage or whether the insurer has the contractual duty to defend even if the underlying claim has yet to be adjudicated. See <u>ACandS, Inc. v. Aetna Cas. & Sur. Co.</u>, 666 F.2d 819 (3d Cir. 1981) (discussed in <u>Hurley</u>, 976 F. Supp. at 273).

In the present case, Defendant claims that the harm alleged by Plaintiff is a contingency that will not become a completed harm until Plaintiff's action against Franklin Mills, <u>Nationwide Life Ins. Co. v. Franklin Mills Assoc. Ltd. P'ship</u>, No. 04-0549 (E.D. Pa. filed Oct. 27, 2004), is resolved.[1]   In its <u>Franklin Mills</u> complaint, Plaintiff seeks a declaration of its rights in the Property and the meaning and enforceability of the Declaration, injunctive relief, and damages. Defendant argues that the harm that Plaintiff alleges in this action "will come to pass if, and only if, it is unsuccessful in the <u>Franklin Mills</u> case." (Def.'s Reply Supp. Mot. Dismiss 5 n.2.)  Therefore, Defendant contends that the present case is premature.

---

1. Defendant claims that Plaintiff's complaint in <u>Franklin Mills</u> is a public record of which this Court may take judicial notice when deciding its Motion to Dismiss Plaintiff's Complaint.  Plaintiff counters that it is inappropriate for this Court to use its complaint in <u>Franklin Mills</u> to establish facts in the present action.  Federal Rule of Evidence 201(b) states that:
> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b).  Most courts take limited notice of complaints filed in related actions.  See <u>Nolte v. Capital One Fin. Corp.</u>, 390 F.3d 311, 317 (4th Cir. 2004); <u>DiCicco v. Willow Grove Bank</u>, 308 F. Supp. 2d 528, 536 n. 4 (E.D. Pa. 2004).  That is, most courts take notice of the filing of a complaint, which is indisputable, but do not take notice of the complaint's allegations, which are subject to dispute. See <u>Nolte</u>, 390 F.3d at 317 (taking notice of the filing of an SEC complaint against defendant corporation's Chief Financial Officer and Executive Vice President, but not of the complaint's allegations); <u>DiCicco</u>, 308 F. Supp. 2d at n. 4 (taking notice of the complaint filed in a related action to establish notice only and not the truth of any statements in the complaint).  Cf. <u>Werner v. Werner</u>, 267 F.3d 288, 295-96 (3d Cir. 2001) (taking notice of the existence and filing of meeting minutes in a separate action, but not taking notice of the content of the minutes); <u>Ernst v. Child & Youth Servs.</u>, 108 F.3d 486, 498-99 (3d Cir. 1997) (taking notice of the submission of an affidavit, but not its contents).
  Applying the reasoning of the above cases, the Court takes notice of the filing of Plaintiff's complaint in <u>Franklin Mills</u> but does not take notice of the complaint's allegations.

Contrary to Defendant's argument, the Court finds that the harm in the present case is a completed harm and is not a contingency. Plaintiff advised Defendant of Franklin Mills' refusal to approve Ironwood as purchaser of the Property and notified Defendant of its claim for coverage. Defendant then denied Plaintiff's claim. Only later, in the course of litigation, did Defendant raise the argument that Plaintiff's Complaint in <u>Franklin Mills</u> renders the present case premature. Defendant's denial of Plaintiff's claim creates sufficient adversity between the parties such that actual harm will result if a judgment is not entered.

### 2. Conclusiveness

A declaratory judgment must be conclusive. "Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." <u>Ne Hub Partners</u>, 239 F.3d at 344. The conclusiveness inquiry also focuses on whether further factual development of the case is necessary for the court to make findings so as to avoid the issuance of an advisory opinion. <u>See</u> <u>Travelers</u>, 72 F.2d at 1155. If the "question presented is 'predominantly legal,' . . . a factual record is not as crucial." <u>Id.</u>

In the present case, the issue before the court is predominantly legal. Interpretation of an insurance contract is a matter of law and is therefore generally performed by a court rather than by a jury. <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). In the present case, the terms of the policy are not in dispute; the interpretation of the policy is in dispute. Therefore, no additional factual development is necessary for the Court to issue a conclusive decision.

### 3. Utility

"Practical utility goes to 'whether the parties' plans of actions are likely to be affected by a declaratory judgment,' and considers the hardship to the parties of withholding judgment." Ne Hub Partners, 239 F.3d at 344-45. "The Declaratory Judgments Act was enacted 'to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." Travelers, 72 F.2d at 1155 (quoting Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 650 (3d Cir. 1990)). Issuing a judgment in this case will clarify the legal relationship between the parties and will facilitate the resolution of Plaintiff's rights with regard to the Property. Therefore, the Court finds that this dispute is ripe for decision and now will consider terms of the Policy.

### B. Rules of Contract Interpretation

Pennsylvania contract law governs this Court's interpretation of the Policy. In Pennsylvania, courts must "ascertain the intent of the parties as manifested by the language of the policy." Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 375-76 (3d Cir. 2001) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)); Madison Constr., 735 A.2d at 106. An insurance policy must be read as a whole and the terms of the policy must be construed according to their plain and ordinary meaning. Jacobs Constructors, 264 F.3d at 376; Madison Constr., 735 A.2d at 606. Ambiguous terms must be construed in favor of the insured. Jacobs Constructors, 264 F.3d at 376; Madison Constr., 735 A.2d at 606. A term is ambiguous "if reasonable persons, after considering the context of the entire policy, would honestly differ as to its meaning." Jacobs Constructors, 264 F.3d at 376. However, courts should "read the policy to avoid ambiguities and not torture the

language so as to create them." Id.  If the "language of the contract is clear and unambiguous, a court is required to give effect to that language." Madison Constr., 735 A.2d at 608.

    **C.**    **Interpretation of the Policy**

        **1.**    **Purpose of the ALTA 9 Endorsement**

Plaintiff claims that the purpose of the ALTA 9 Endorsement is to add "some coverages back" to the main Policy.  (Pl.'s Reply 8.)  The ALTA 9 Endorsement provides that:

> The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:
> 1. The existence at Date of Policy of any of the following:
> . . .
>   (b) *Unless expressly excepted in Schedule B*
>     . . .
>     (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

(Pl.'s Reply Ex. A 10.) (emphasis added).  Plaintiff admits that the Insuring Provisions except the items listed in Schedule B from coverage under the Policy.  Id. at 7.  The Declaration, which Plaintiff claims contains an option to purchase and a right of prior approval, is listed in Schedule B, and therefore, by Plaintiff's own admission, is excluded from coverage under the Insuring Provisions.  The Insuring Provisions provide that:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, *THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B* AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH . . . insures . . . against loss or damage, . . . sustained or incurred by reason of:
> . . .

> (6) The priority of any lien or encumbrance over the lien of the insured mortgage;

(Pl.'s Reply Ex. A 1.) (emphasis added).  Plaintiff argues that, consistent with its purpose, the ALTA 9 Endorsement provides limited coverage for the items listed in Schedule B, including the Declaration, which are excluded from coverage under the main Policy by the Insuring Provisions. (Pl.'s Reply 9-12.)  In support of this contention, Plaintiff cites Joyce D. Palomar's treatise, <u>Title Insurance Law</u> (1994).  Palomar explains that the purpose of the ALTA 9 Endorsement is to provide "affirmative insurance against loss resulting from either the priority of a restrictive covenant over the insured interest or the enforcement of a restrictive covenant."  <u>Id.</u> § 9.4. However, Defendant correctly points out that Palomar goes on to state that:

> [t]he standard ALTA 9 Endorsement may be attached to a loan policy to insure that, *other than any listed as exceptions in the Policy's Schedule B*, existing enforceable restrictive covenants have not been violated and no covenants contain a forfeiture clause that could cause impairments of loss of the insured interested should a covenant be found to have been violated.

<u>Id.</u> (emphasis added).  Therefore, Plaintiff's initial premise that the purpose of the ALTA 9 is to add coverage to the Policy is correct but, according to its own cited authority, does not apply to the exceptions listed in Schedule B, and thus the Declaration.

### 2. "Expressly Excepted in Schedule B"

The parties also dispute the meaning of the phrase *"expressly excepted in Schedule B"* found in Part 1(b) of the ALTA 9 Endorsement.  Plaintiff argues that in order for an item to be "expressly excepted in Schedule B" under the ALTA 9 Endorsement, the language in Schedule B must specify that the document is *"expressly excepted from the coverage afforded by the ALTA 9 endorsement . . . ."*  (Pl.'s Reply 10.)  The first page of Schedule B is titled:

SCHEDULE B
EXCEPTIONS FROM COVERAGE

PART I

(Pl.'s Reply Ex. A 6.)  Schedule B does not contain any references to *"exceptions from the coverage afforded by the ALTA 9 endorsement."*  According to Plaintiff, the "Exceptions from Coverage" heading in Schedule B means that the items in Schedule B are excepted from coverage under the Insuring Provisions, but are not excepted from coverage under the ALTA 9 Endorsement.  Plaintiff argues that the absence of the phrase *"afforded by the ALTA 9 endorsement"* in Schedule B  means that the items listed in Schedule B, including the Declaration, are afforded coverage under the ALTA 9 Endorsement.  ____

Defendant argues that there is a two-pronged test for an item to meet the coverage requirements of the ALTA 9 Endorsement.  First, the item must be an instrument "referred to in Schedule B as containing covenants, conditions, or restrictions on the land which, . . . provide[] for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant."  (Pl.'s Reply Ex. A 10.)  Second, the item must not be "expressly excepted in Schedule B."  Defendant argues that even if the Declaration is "an option to purchase, right of first refusal, or prior approval of a future purchaser or occupant," under the first prong of the test, it is "expressly excepted by Schedule B," under the second prong of the test, and therefore, is not afforded coverage under the ALTA 9 Endorsement.

Defendant claims that the items listed in Schedule B, Part I, including the Declaration, are "expressly excepted in Schedule B" within the meaning of the ALTA 9 Endorsement because the heading "Exceptions from Coverage" appears on above Schedule B,

11

Part I.  According to Defendant, the "Exceptions from Coverage" heading applies to Schedule B, Part I and does not apply to Schedule B, Part II.  Schedule B, Part II provides that:

SCHEDULE B

PART II

> In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

(Pl.'s Reply Ex. A 8.)  The Policy then lists three items.  Defendant reasons that the ALTA 9 Endorsement provides coverage for Schedule B, Part II, which is not "expressly excepted in Schedule B," and does not provide coverage for Schedule B, Part I, which *is* "expressly excepted in Schedule B."  In support of this argument, Defendant points out that the "Exceptions from Coverage" heading appears only on the first page of Schedule B and does not appear above the heading for Schedule B, Part II.

In response, Plaintiff contends that the "Exceptions from Coverage" header on the first page of Schedule B applies to *both* Part I and Part II.  In Plaintiff's view, the absence of the header over Schedule B, Part II does not signify a change in "logic and meaning."  (Pl.'s Reply 12.)  According to Plaintiff, the items listed in Schedule B, Part II are excepted from coverage, "but with one exception; the items on Part II are insured as subordinate to Plaintiff's lien." (Pl.'s Reply 12.)  Plaintiff further argues that if Schedule B, Part II does actually afford

coverage, as Defendant claims, subparagraph six (6) of the Insuring Provisions, which also grants coverage for prioritization of liens, would be rendered superfluous.[2]

The Court finds that Defendant's explanation of the Policy is consistent with the Policy's plain and ordinary meaning. The ALTA 9 Endorsement provides coverage for an instrument referred to in Schedule B, if that instrument provides for an option to purchase, a right of first refusal, or the prior approval of a future purchaser or occupant, *unless* that instrument is expressly excepted in Schedule B. Plaintiff alleges that the Declaration contains an option to purchase the Property and a right of prior approval of a future purchaser. The heading and language of in Schedule B, Part I clearly indicate that the Declaration is "expressly excepted in Schedule B." Schedule B, Part I is titled "Exceptions to Coverage." Part I states that the "policy does not insure against loss or damage . . . which arise by reason of" several items, including the Declaration. (Pl.'s Reply Ex. A 6.)

Contrary to these clear indications that the items listed in Schedule B, Part I, including the Declaration, are excepted from coverage, Plaintiff asks the Court to find that additional language ("*expressly excepted from the coverage afforded by the ALTA 9 endorsement")* is necessary to except an item from coverage for purposes of the ALTA 9 Endorsement. While the additional language suggested by Plaintiff would make Defendant's Policy more clear, it is not necessary to convey Defendant's intended meaning. Reasonable persons, considering the context of the entire policy, would not differ as to the meaning of

---

2. In its Surreply, Plaintiff also argues that the mere existence of the Declaration, and not loss or damage sustained by reason of the Declaration, "triggers" coverage under the Policy. This argument was intended to counter Defendant's argument that the case is not yet ripe for review. Because the Court finds that the present case is ripe for review, the Court does not address Plaintiff's final argument.

"expressly excepted in Schedule B." Therefore, the Court does not find the Policy to be ambiguous. Reading additional terms into the stated language, as Plaintiff suggests, would "torture the language" of the Policy so as to create ambiguities, which the Court should avoid in the case of an unambiguous policy. Jacobs Constructors, 264 F.3d at 376.

In addition, Plaintiff's argument that Schedule B, Part II is excepted from coverage, "but with one exception; the items on Part II are insured as subordinate to Plaintiff's lien," also tortures the language of the Policy. (Pl.'s Reply 12.) Defendant's explanation that Schedule B, Part II is covered under the ALTA 9 Endorsement, because it is not expressly excepted in Schedule B, comports with the plain and ordinary meaning of the Policy. The Policy would be clearer had Defendant placed the "Exceptions from Coverage" header under "Part I" instead of under "Schedule B." This would have made overtly transparent that Schedule B, Part I contains exceptions from coverage, while Schedule B, Part II does not. However, the language preceding Part I makes clear that the items listed in Part I are exceptions from coverage ("[t]his policy does not insure against . . . .) (Pl.'s Reply Ex. A. 6.), while the language preceding Part II indicates that the items listed in Part II are not exceptions from coverage ("the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest") Id. at 8. Therefore, the language and structure of the Policy is sufficiently clear such that reasonable persons could not differ as to its meaning.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE LIFE INSURANCE COMPANY, : : | |
| : | CIVIL ACTION |
| Plaintiff,       : | NO. 05-281 |
| : | |
| v.               : | |
| : | |
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, : : | |
| : | |
| Defendant.     : | |

# ORDER

AND NOW, this 19th day of October, 2005, upon consideration of Defendant's Motion to Dismiss Plaintiff's Complaint (Docket No. 3), Plaintiff's Reply (Docket No. 4), Defendant's Reply (Docket No. 5), and Plaintiff's Surreply (Docket No. 8), it is hereby

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint is **GRANTED.**

This case is **CLOSED.**

BY THE COURT:

_____
RONALD L. BUCKWALTER, S.J.